## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CHASTITY C.,[1]**

   **Plaintiff,**

            **Case No. 2:23-cv-3196**
  **v.**           **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,[2]**
**Commissioner of Social Security,**

   **Defendant.**

### OPINION AND ORDER

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Chastity C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I. PROCEDURAL HISTORY

  On October 11, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since May 8, 2019. R. 106, 115, 221–26. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 125–34, 138–47. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 149–50. ALJ Dina Loewy held a hearing on June 1, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 64–105. In a decision dated March 31, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 8, 2019, Plaintiff's alleged disability onset date, through the date of that decision. R. 37–49. That decision became final when the Appeals Council declined review on April 11, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 20, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 2.[3] On June 21, 2023, the case was reassigned to the undersigned. ECF No. 3. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent
such articulation, the Court "cannot tell if significant probative evidence was not credited or
simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements under the Social Security Act through

December 31, 2023. R. 40. She was 42 years old on May 8, 2019, her alleged disability onset

date. R. 47. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity between Plaintiff's alleged disability onset date and the date of the decision. R. 40.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

anemia; hypertension; asthma; headaches; and hypertrophic cardiomyopathy. *Id*. The ALJ also

found that the following impairments were not severe: hypermetropia; presbyopia; dysthymic

disorder; thyroid nodule; neuropathy; kidney stone; heart failure; and chronic pain. R. 40–41.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. R. 41.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject

to various additional non-exertional limitations:

> [T]he claimant has the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) except: lifting or carrying up to 10 pounds
> occasionally and less than 10 pounds frequently; standing and/or walking with
> normal breaks for up to 2 hours in an 8- hour workday; sitting with normal breaks
> for up to six hours in an 8-hour workday; after standing or walking for 15
> minutes, may sit for 3 minutes while on task; occasionally climbing ramps or
> stairs; never climbing ladders, ropes, and scaffolds; occasionally stooping; never
> kneeling crouching or crawling; frequent reaching, handling or fingering;
> occasional push/pull; avoid concentrated exposure to extreme temperatures and to
> humidity; avoid even moderate exposure to pulmonary irritants such as fumes,
> odors, dusts or gases; avoid all exposure to hazardous machinery unprotected
> heights and operational control of moving machinery; moderate office level noise;
> jobs not requiring foot controls operation; and jobs having access to a restroom.

R. 41–42. The ALJ also found that this RFC did not permit the performance of Plaintiff's past

relevant work as an administrative clerk. R. 46.

At step five and relying on the testimony of the vocational expert, the ALJ found that a

significant number of semi-skilled sedentary jobs−*e.g.*, jobs as an information clerk, an appointment clerk, and a receptionist−existed in the national economy and could be performed by Plaintiff in light of this RFC. R. 47–48. Alternatively, the ALJ also noted that, according to the vocational expert, a claimant with Plaintiff's vocational profile and this RFC (but further limited to simple routine and repetitive tasks) could perform such sedentary unskilled jobs as addresser, document preparer, and charge account clerk, all of which exist in significant numbers in the national economy. R. 48 n.1.

The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 8, 2019, her alleged disability onset date, through the date of the decision. R. 48–49.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 23. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16.

## IV.    DISCUSSION

### A.    Step Five

Plaintiff argues that the Commissioner failed to carry his burden, at step five of the sequential evaluation process, to establish that there is other work that exists in significant numbers in the national economy that Plaintiff could perform. *Plaintiff's Brief*, ECF No. 14, pp. 19–34; *Plaintiff's Reply Brief*, ECF No. 23, pp. 1–8. Plaintiff specifically argues that the ALJ

8

failed to identify the transferable skills required to perform the semi-skilled jobs identified by the vocational expert and relied upon by the ALJ. *Id*. (citing, *inter alia*, SSR 82-41, 1982 WL 31389). According to Plaintiff, the ALJ's error in this regard is not harmless. *Id*. This Court disagrees that this issue requires remand.

At step five, an ALJ must decide whether the claimant, considering the claimant's RFC and vocational profile, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential evaluation process, the Commissioner bears the burden of proof at step five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005)). To meet this burden, an ALJ may use the Medical-Vocational Guidelines (also known as the "Grids") provided in 20 C.F.R. Part 404, Subpart P, Appendix 2. *Sykes*, 228 F.3d at 263 (explaining further that "[t]he grids consist of a matrix of four factors—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy"); *see also* SSR 00–4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9[.]"). "When the four factors in a claimant's case correspond *exactly* with the four factors set forth in the grids, the ALJ must reach the result the grids reach." *Hall v. Comm'r of Soc. Sec.*, 218 F. App'x 212, 216 (3d Cir. 2007) (emphasis in original) (citing *Sykes,* 228 F.3d at 263; 20 C.F.R. § 404.1569 and Subpart P, Appendix 2, § 200.00). "However, where the limitations imposed by a claimant's impairments and related symptoms affect the ability to meet both the strength demands and non-strength demands of jobs, the grids will *not* apply to direct a conclusion as to disability, but will be used solely as a

9

framework to guide the disability decision." *Id.* (citing 20 C.F.R. § 404.1569a(d)) (emphasis in original); *see also Martin v. Barnhart*, 240 F. App'x 941, 944 (3d Cir. 2007) ("When an individual's specific vocational profile does not fully coincide with a grid rule, a disability finding is not 'directed'; rather, the grid rules are used as a frame of reference for a disability decision.") (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d)). When the Grids are used simply as a frame of reference, an ALJ must rely on additional evidence, such as vocational expert testimony, to meet the Commissioner's step five burden. *Sykes*, 228 F.3d at 273.

In addition, Social Security Ruling ("SSR") 82-41 explains that "[s]kills and their transferability relate to 'work experience' in the definition of disability and to people's abilities to do occupations different from those they did before becoming impaired." SSR 82-41, 1982 WL 31389, at *1 (Jan. 1, 1982); *see also Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 n.4 (3d Cir. 2003) (stating that Social Security rulings "are binding on all components of the" Social Security Administration); *Mendes v. Barnhart*, 105 F. App'x 347, 350 n.2 (3d Cir. 2004) (same). SSR 82-41 explains when transferability of work skills is at issue:

> Transferability[4] of skills[5] is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in

---

[4] "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs. Transferability is distinct from the usage of skills recently learned in school which may serve as a basis for direct entry into skilled work[.]" SSR 82-41, 1982 WL 31389, at *2.

[5] SSR 82-41 defines a "skill" as

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

*Id.*; *see also* 20 C.F.R. § 404.1568(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."), (b) ("Semi-skilled

> Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled. . . . *When the table rules in Appendix 2* [the Grids] *are applicable to a case, transferability will be decisive in the conclusion of "disabled" or "not disabled" in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of "not disabled" may be based on the ability to do unskilled work.*

SSR 82-41, 1982 WL 31389, at *1 (emphasis added). SSR 82-41 also explains when an ALJ

must make certain factual findings:

> When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.

> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision. Evidence that these specific skilled or semiskilled jobs exist in significant numbers in the national economy should be included (the regulations take administrative notice only of the existence of unskilled sedentary, light, and medium jobs in the national economy). This evidence may be VS [vocational specialist] statements based on expert personal knowledge or substantiation by information contained in the publications listed in regulations sections 404.1566(d) and 416.966(d). It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

*Id*. at *7.

In her written decision, the ALJ in this case found that Plaintiff was unable to perform

her past relevant work as an administrative clerk (defined as light, semi-skilled work with a SVP

of 4). R. 46–47. The ALJ noted that Plaintiff had at least a high school education and was 42

---

work is work which needs some skills but does not require doing the more complex work duties."), (c) ("Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced."); 20 C.F.R. § 404.1568(d) (explaining that transferability of skills "is most probable and meaningful among jobs" in which "(i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved").

years old (defined as a younger individual, aged 18–44) on her alleged disability onset date of

May 18, 2019. R. 47. The ALJ expressly found that transferability of job skills "is not material to

the determination of disability because using the Medical-Vocational Rules as a framework

supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable

job skills[.]" *Id*. (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). In finding

that Plaintiff was able to perform other jobs in that exist in significant numbers in the national

economy, the ALJ explained:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or non-exertional limitations (SSRs 83-12 and 83-14).
>
> If the claimant has solely non-exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15). *If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28[6] and Rule 201.21[7].* However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.

R. 47.

---

[6] Grid rule 201.28 provides that a younger individual (age 18–44) who is a high school graduate or more with skilled or semi-skilled previous work experience and such skills are not transferable is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.28.

[7] Grid rule 201.21 provides that a younger individual (age 45–49) who is a high school graduate or more with skilled or semi-skilled previous work experience and such skills are not transferable is not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.21.

As noted above, the vocational expert identified both semi-skilled and unskilled jobs that a claimant with Plaintiff's vocational profile and RFC could perform. R. 97-98. The vocational expert also testified, in response to inquiry by the ALJ, that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"):

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT]. The vocational expert testified that the [DOT] did not address the stand/walk, sit option, or the bathroom access. (Hearing Testimony). Hence, the vocational expert testified that her testimony in this regard was based on her professional experience. (Id. 17E). This explanation for the discrepancy is reasonable and accepted in accordance with SSR00-4p.

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

R. 48.

In challenging the ALJ's finding at step five, Plaintiff complains that the ALJ failed to comply with SSR 82-41 when she failed to question the vocational expert about whether Plaintiff had acquired any work skills from her past semi-skilled work and, if so, to what semi-skilled jobs those skills transferred; Plaintiff also argues that the ALJ erred when she failed to include such findings in her written decision. *Plaintiff's Brief*, ECF No. 14, pp. 21–27 (citing *Dikeman v. Halter*, 245 F.3d 1182 (10th Cir. 2001); *A Randee D. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-01905-HL, 2022 WL 92945 (D. Or. Jan. 10, 2022); *Saafeld v. Colvin*, No. CV 14-1108, 2016 WL 4871161, at *2-3 (E.D. Pa. Sept. 15, 2016); *Marshall v. Comm'r of Soc. Sec.*, No. CIV. 13-05731 RMB, 2015 WL 778762, at *6-7 (D.N.J. Feb. 24, 2015); *Oldenburgh v. Astrue*, No. 1:08-CV-1671, 2009 WL 812010, at *4–5 (M.D. Pa. Mar. 26, 2009)).

For his part, the Commissioner argues that transferability of job skills was not material to the disability determination in this case because the applicable Grid rules for transferable and non-transferable skills[8] both direct a finding of "not disabled." *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, pp. 5–9. The ALJ, the Commissioner argues, therefore appropriately obtained vocational expert testimony to confirm the existence of a significant number of semi-skilled jobs in the national economy without identifying the particular transferable skills needed to perform such jobs. In advancing this argument, the Commissioner refers to POMS DI 25015.017(B)[9]; POMS DI 25025.022(A).[10] *Id.*

In reply, Plaintiff first notes that the ALJ relied on expert testimony—not on the Grids— to find that Plaintiff was not disabled. *Plaintiff's Reply Brief*, ECF No. 23, pp. 1–5 (citing R. 47– 48; *Sykes*, 228 F.3d at 269, 274). Accordingly, Plaintiff argues, the Commissioner's reliance on

---

[8] 20 C.F.R. Part 404, Subpt. P, App. 2, Rules 201.28 (younger individual age 18-44, high school graduate or more, no transferable skills); 201.29 (younger individual age 18-44, high school graduate or more, transferable skills); Rules 201.21(younger individual age 45-49, high school graduate or more, no transferable skills); 201.22 (younger individual age 45-49, high school graduate or more, transferable skills).

[9] "POMS" is the agency's Program Operations Manual System. POMS DI 25015.017 provides, *inter alia*, that

> [t]ransferability of skills is an issue when all four of the following are true:
> 1. *Transferability is material to the determination*;
> 2. The individual's residual functional capacity (RFC) or mental residual functional capacity (MRFC) prevent the performance of past relevant work (PRW);
> 3. PRW has been determined to be skilled or semiskilled; and
> 4. The claimant does not have a mental impairment that prevents him or her from doing skilled and semiskilled work.

*Id.* (emphasis added).

[10] POMS DI 25025.022 explains that "[i]f the claimant has past relevant skilled or semiskilled work and the decision rules for skills transferable and skills not transferable both direct a finding of not disabled, the issue is not material to the determination." *Id.* at 25025.022(A). This provision further instructs the Agency to "[u]se the rule for skills not transferable as a framework for a determination when transferability of skills is not material to the determination. It is not necessary to cite jobs for this type of framework determination if the claimant's RFC, age, and education match the requirement of the not transferable rule." *Id.* at 25025.022(B).

14

SSR 82-41 is misplaced because that ruling "only applies in those limited cases where the Grids apply to direct a finding of non-disability, a circumstance not present here." *Id*. at 5. Plaintiff also argues that the Commissioner's reliance on POMS DI 25015.022 is misplaced because POMS do not have the force of law. *Id*. at 7–8.

The United States Court of Appeals for the Third Circuit has not specifically addressed whether SSR 82-41 is applicable under the circumstances presented in this case. However, this District Court has previously found that the transferability of skills was material—therefore triggering the requirement to specifically identify such skills—where the Grid rules were applicable only as a framework for decision because the claimant's RFC included non-exertional limitations, and those rules directed conflicting findings of "disabled" and "not disabled." *Marshall*, 2015 WL 778762, at *6 (citing SSR 82-41). The Court in *Marshall* concluded that the ALJ had erred in posing to the vocational expert a vocational profile that referred to, but did not identify, the plaintiff's transferable work skills.[11] The Court therefore remanded the matter "so that the ALJ may present the vocational expert with a complete and accurate hypothetical" when that expert renders an opinion about the availability of other jobs in the national economy that the claimant could perform. *Id*. at *8–9.[12]

This Court need not resolve this issue because, even assuming (without deciding) that the ALJ erred in finding that Plaintiff could perform other semi-skilled jobs without identifying any

---

[11] However, the ALJ identified specific transferable skills in the written decision. *Marshall*, 2015 WL 778762, at *8.

[12] *Oldenburgh,* 2009 WL 812010, another District Court in this Circuit, and *Randee D.*, 2022 WL 92945, a court outside this Circuit, both reversed the decisions of the Commissioner where the claimants had skilled or semi-skilled previous work experience and the ALJs in those cases failed to identify transferable work skills when finding that the claimants could perform other semi-skilled jobs in the national economy.

transferrable skills, any such error was harmless.  As noted above, after identifying the semi-skilled jobs available to a claimant with Plaintiff's vocational profile and RFC, the vocational expert also testified that Plaintiff's vocational profile and RFC would permit the performance of the unskilled jobs of addresser, document preparer, and charge account clerk. R. 98. Moreover, all the jobs identified by the vocational expert were, according to her testimony, consistent with the DOT and the expert's experience and knowledge. R. 98-99.

Plaintiff disagrees with this conclusion.  *Plaintiff's Brief*, ECF No. 14, pp. 27–34. Plaintiff specifically argues that, according to the DOT, the three unskilled jobs identified by the vocational expert involve a moderate noise level which, Plaintiff insists, is inconsistent with the ALJ's RFC: "[T]hese jobs could not be performed by an individual who must avoid 'all exposure' to 'moderate office level noise,' a limitation set forth in the ALJ's hypothetical question and in her RFC assessment. (Tr. 41-42, 96-97)." *Id*. at p. 27. *See also Exhibits 1-3*, ECF Nos. 14-1, 14-2, 14-3. attached to *Plaintiff's Brief*. Plaintiff also challenges the vocational expert's testimony that her testimony was consistent with the DOT because the vocational expert failed to identify or to explain the discrepancy between the DOT and the noise levels of the unskilled jobs identified by her. *Id*. at p. 29.

Plaintiff's arguments in this regard are based on a misreading of the RFC found by the ALJ. As noted above, the ALJ's written decision found that Plaintiff had the RFC for a limited range of sedentary work and reads in pertinent part as follows:

> [O]ccasionally climbing ramps or stairs; never climbing ladders, ropes, and scaffolds; occasionally stooping; never kneeling crouching or crawling; frequent reaching, handling or fingering; occasional push/pull; avoid concentrated exposure to extreme temperatures and to humidity; avoid even moderate exposure to pulmonary irritants such as fumes, odors, dusts or gases; *avoid all exposure to hazardous machinery, unprotected heights and operational control of moving machinery; moderate office level noise; jobs not requiring foot controls operation; and jobs having access to a restroom.*

16

R. 41–42 (emphasis added). A fair reading of the ALJ's decision makes clear that each limitation separated by a semicolon in this RFC stands independently of the other limitations in the RFC. Thus, this RFC would preclude jobs that present any exposure to hazardous machinery, unprotected heights, and operational control of moving machinery, but would permit jobs that involve moderate office level noise.

However, in arguing that the ALJ's RFC requires that Plaintiff "must avoid 'all exposure' to 'moderate office level noise,'" Plaintiff quotes—not the ALJ's written decision—but rather phrases taken from the transcript of the administrative hearing, which reads in pertinent part as follows:

> Occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, occasionally stooping, never kneeling, crouching or crawling, frequent reaching, handling or fingering, occasional push/pull, avoiding concentrated exposure to extreme temperatures and to humidity, avoiding concentrated exposure to pulmonary irritants such as fumes, odors, dusts or gases. Hold on a second. *Avoiding even moderate exposure to – I'm going to say avoiding all exposure to hazardous machinery, unprotected heights and operational control of moving machinery, moderate office level noise, jobs not requiring foot control operation and having access to a restroom.*

R. 96-97 (emphasis added). Plaintiff apparently reads this portion of the transcript as treating each of the restrictions separated by a comma as similarly limited and as requiring that Plaintiff avoid all exposure to moderate level noise. But that readings suggests an absurd RFC that would permit only jobs that "requir[e] foot control operation" and have no "access to a restroom". The Court rejects this reading of the record. Rather than prohibiting jobs that involve moderate office level noise, the ALJ's RFC—fairly read—prohibits jobs that involve <u>more than</u> moderate office level noise. Because the DOT descriptions of the unskilled jobs identified by the vocational expert and referred to by the ALJ in the written decision present no more than moderate office

level noise, *see* Exhibits 1-3, ECF Nos. 14-1, 14-2, 14-3, there was, as the vocational expert

testified, no discrepancy in this regard between the DOT and her testimony.

In short, the Court concludes that, even assuming (without deciding) that the ALJ erred in

failing to identify the skills that could be transferred to the semi-skilled jobs referred to by the

vocational expert, any such error was harmless in light of the vocational expert's identification of

unskilled jobs that exist in significant numbers that a claimant with Plaintiff's vocational profile

and the RFC found by the ALJ could perform.

## B.    Subjective Statements

Plaintiff also argues that the ALJ erred in her consideration of Plaintiff's subjective

statements. *Plaintiff's Brief*, ECF No. 14, pp. 34–40; *Plaintiff's Reply Brief*, ECF No. 23, pp. 8–

13. For the reasons that follow, the Court is not persuaded that this issue requires remand.

"Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

In crafting Plaintiff's RFC for a limited range of sedentary work, the ALJ in this case specifically considered Plaintiff's subjective complaints. R. 43. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record

19

for the reasons explained in this decision." *Id.* (stating further that such statements "are inconsistent because the evidence generally does not support the alleged loss of functioning"). The ALJ detailed years of medical evidence and record testimony to support her findings, including, *inter alia*, evidence that Plaintiff homeschooled her two children; her report that she was able to do laundry and grocery shop but that her ability to complete those tasks was limited due to difficulty lifting heavy objects; Plaintiff's history of noncompliance with her prescribed medication and evidence that she twice refused treatment for her blood pressure during a hospital visit following a motor vehicle accident in September 2020; evidence that, although Plaintiff reported nausea, vomiting, and epigastric pain in June 2019, she also reported that her blood pressure had improved; cardiac testing that yielded generally normal results; a physician's note that Plaintiff's September 2019 bloodwork was normal; evidence that, although her blood pressure was reported as high in October 2019, she reported in December 2019 that she was doing reasonably well; Plaintiff's failure in December 2019 to undergo a scheduled endoscopy; a June 2020 esophogram that was normal and a physical examination that was generally normal; her report to her primary care physician in June 2020 that she was not eating, was vomiting, and had daily episodes of dizziness with severe stomach pain, but her physician noted that there were no objective findings to support her complaints of gastric pain and that it was likely irritable bowel syndrome; the July 2020 report of adequate blood pressure control despite Plaintiff not taking her medication as prescribed; a September 2020 physical examination following a motor vehicle accident which was generally unremarkable and a mini psychiatric assessment which was within normal limits; an October 2020 sonogram that indicated an irregular thickened endometrium and dysfunctional uterine bleeding likely due to fibroids or andenomyosis, followed by a benign endometrial biopsy and a normal physical examination; a March 2021

physical examination that was normal with much improved blood pressure; an April 2021 physical examination that was again within normal limits and an echocardiogram that yielded mild results; an echo examination that showed an ejection fraction rate of 50–55% and a finding of cardiomyopathy due to hypertension with heart failure, although the treatment plan was conservative, consisting of a low sodium diet and further lab testing; Plaintiff's history of anemia with iron infusions, a February 2019 hemoglobin level of 11.5, which was noted to be stable, and a January 2020 notation that her anemia was stable with a normal ferritin and hemoglobin; a notation of uncomplicated asthma with reported varied symptoms depending on the change in seasons; a prescription for an inhaler for the treatment of asthma with the notation that Plaintiff was a smoker; the fact that the record contained no evidence that Plaintiff required any significant hospitalization due to her anemia or asthma. R. 42–46. In the view of this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See* 20 C.F.R. § 404.1529(c)(3)(v); *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286; *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009) ("an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason") (citing SSR 96–7p);[13] *Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's conservative treatment history following surgery as a factor that supported the ALJ's determination to

---

[13] "SSR 96-7p, has since been superseded by SSR 16-3p. . . . A comparison of these rulings reveals that there are few substantive changes. Both outline a two-step process to evaluate a claimant's subjective statements, and identify the same factors to be considered in the ALJ's assessment of the intensity, persistence, and limiting effects of a claimant's symptoms." *Barker v. Colvin*, No. 1:15-CV-574, 2016 WL 4408997, at *9 n.3 (M.D. Pa. July 27, 2016) (noting further that "[b]ecause the ALJ and the parties cite to SSR 96-7p, we rely on this ruling as well. However, this analysis would not be different under the new ruling"), *report and recommendation adopted*, No. 1:15-CV-574, 2016 WL 4366952 (M.D. Pa. Aug. 16, 2016).

discount the claimant's subjective complaints); *Van Horn*, 717 F.2d at 873; *Brown v. Comm'r of Soc. Sec.*, No. 4:20-CV-2300, 2022 WL 4080773, at *7 (M.D. Pa. Sept. 6, 2022) ("Conservative treatment can be used as a factor in evaluating medical opinion evidence.") (citing 20 C.F.R. § 416.920c (c)(3)(iv)).

   In challenging the ALJ's consideration of her subjective statements, Plaintiff first complains that the ALJ's "unelaborated findings referencing the 'conservative treatment record' was insufficient." *Plaintiff's Brief*, ECF No. 14, pp. 36–37 (citing R. 46 and *Sykes*, 228 F.3d 259, 266 n.9 (3d Cir. 2000)); *see also Plaintiff's Reply Brief*, ECF No. 23, p. 9. This Court disagrees. As detailed above, the ALJ noted throughout her discussion at step four that Plaintiff's treatment consisted of, *inter alia*, changes in diet, lab testing, prescription medication, injections, and no significant hospitalizations. R. 43–46. The ALJ's discussion did not simply refer to a "conservative treatment record" with no discussion of what that meant. *See id*. Moreover, Plaintiff has not pointed to evidence or authority that undermines the ALJ's characterization of this treatment as conservative. *See Plaintiff's Brief*, ECF No. 14, pp. 36–37; *Plaintiff's Reply Brief*, ECF No. 23, p. 9; *see also Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4 (D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including trigger point injections, and physical therapy"). Finally, Plaintiff's reliance on *Sykes* is unavailing for the reason that Plaintiff herself admits: "In *Sykes*, the '*only* explanation' provided by the ALJ for 'rejecting or discrediting evidence of Sykes's subjective complaints of pain' was that 'Sykes has only received conservative treatment for pain.'" *Plaintiff's Brief*, ECF No. 14, p. 36 (quoting *Sykes*, 228 F.3d at 266 n.9) (emphasis added). In the case presently before this Court, the ALJ's discussion detailed not only why Plaintiff's treatment qualified as conservative but

also provided other reasons (discussed below) for discounting Plaintiff's subjective statements.

R. 42–45.

Plaintiff next argues that the ALJ's "generic reference" to Plaintiff's "activities of daily living" was "insufficient" and unexplained, and that the ALJ's discussion "actually misstated" Plaintiff's activities. *Plaintiff's Brief*, ECF No. 14, pp. 37–39 (citing the ALJ's references to various activities). Plaintiff specifically contends that the ALJ mischaracterized Plaintiff's homeschooling of her children and her grocery shopping:

> The ALJ actually misstated [Plaintiff's] testimony about her daily activities as she testified that she was unable to grocery shop by herself not only because she cannot lift, but because her feet are "always swollen" and "I can't really walk that much and I'm limited." (Tr. 81). Regarding home schooling, [Plaintiff] testified that "I'll get up and put them on the laptop." (Tr. 80). The record documents that she home schooled "due to Covid," as most parents were required to do, and does not show that [Plaintiff's husband] prepared lesson plans or was actively involved in teaching her children; indeed, as she testified, she merely "put them on th[e] laptop." (Tr. 80, 109).

*Id*. at 38; *see also Plaintiff's Reply Brief*, ECF No. 23, pp. 12–13. Plaintiff insists that her activities "are not in any way inconsistent with her disability claim[,]" *Plaintiff's Brief*, ECF No. 14, p. 38–39. The Court is not persuaded that this issue requires remand.

An ALJ may consider a claimant's daily activities when assessing the claimant's subjective complaints and testimony. 20 C.F.R. § 404.1529(c)(3)(i); *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015) ("The evidence from [the claimant's] doctors and the evidence regarding his daily activities . . . support the ALJ's finding with respect to [the claimant's] credibility."); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.")

(citations omitted). While Plaintiff contends that the ALJ mischaracterized Plaintiff's ability to grocery shop and homeschool her children, the Court cannot say that the ALJ committed reversible error in this regard. As for grocery shopping, the ALJ noted that Plaintiff "reported that she was able to do laundry and grocery shopping. However, she noted her ability to complete such tasks were [sic] limited due to difficulty lifting heavy objects." R. 42. Plaintiff argues that this is a misstatement of her testimony because she "testified that she was *unable* to grocery shop by herself not only because she cannot lift, but because her feet are 'always swollen' and 'I can't really walk that much and I'm limited.' (Tr. 81)." *Plaintiff's Brief*, ECF No. 14, p. 38 (emphasis in the original). However, when asked at the hearing if she goes grocery shopping, Plaintiff responded: "Sometimes, if I can. Not by myself because I can't lift. And especially, my feet are always swollen currently. So, I can't really walk that much and I'm limited. Put it that way. It depends. Every day is very different, very straining." R. 81. Based on this record, Plaintiff has not shown that the ALJ misstated the record when she noted that Plaintiff was limited in her ability to grocery shop because she had difficulty lifting heavy objects. R. 42. Moreover, while Plaintiff points to her hearing testimony that her feet were swollen and she "can't really walk much[,]" the ALJ's discussion as detailed above reflects, *inter alia*, that Plaintiff's physical examinations were generally normal or benign, that she had a normal gait, stance, and balance in April 2021, and that her musculoskeletal findings were normal with normal movement of all extremities and no tenderness in March 2021. R. 45.

As to home schooling, the ALJ noted that Plaintiff "testified that she lived with her husband and two children, aged 6 and 11, whom she homeschooled." R. 42; *see also* R. 46 ("Furthermore, the claimant testified that she had the mental capacity to care for her two minor children and engage in homeschool. As such there is no evidence to support even mild

limitations [in understanding and adaptation].”). Plaintiff contends that the ALJ misstated the evidence regarding home schooling because Plaintiff homeschooled her children during Covid, like most parents were required to do, and that Plaintiff testified that “she merely ‘put them on th[e] laptop.’” *Plaintiff’s Brief*, ECF No. 14, p. 38 (citing R. 80, 109). Asked during the hearing about her daily activities, Plaintiff responded, “[R]ight now, *I currently homeschool my two children*. And I’ll get up every day and put them on the laptop. I can’t really – every day is different.” R. 80 (emphasis added). Based on this record, the Court cannot say that the ALJ misstated Plaintiff’s hearing testimony or that this issue otherwise requires remand.

To the extent that Plaintiff argues that her activities “are not in any way inconsistent with her disability claim” and complains that the ALJ does not explain how such activities conflict with her subjective statements, *Plaintiff’s Brief*, ECF No. 14, pp. 38–39; *Plaintiff’s Reply Brief*, ECF No. 23, pp. 12–13, those arguments boil down to simply a disagreement with the ALJ’s reasoning—*i.e.,* an argument that will not serve as a basis for remand. As the Court previously noted, an ALJ may consider a claimant’s activities when evaluating that claimant’s subjective statements. Moreover, in any event, Plaintiff’s activities were but one factor that the ALJ considered when discounting Plaintiff’s statements.

Plaintiff also contends that the ALJ did not consider “most of the regulatory factors.” *Plaintiff’s Reply Brief*, ECF No. 23, p. 13. This is not a basis for remand of the action. As detailed above, the ALJ considered objective medical evidence, including, *inter alia*, mostly normal physical examination findings; opinion evidence; Plaintiff’s daily activities, complaints of pain; Plaintiff’s conservative treatment history, including, *inter alia*, diet changes, prescription medication, injections, and lab work,but no significant hospitalization for her anemia or asthma. R. 42–46. In short, the ALJ detailed Plaintiff’s hearing testimony at length and considered it in

the context of the opinion evidence as well as the objective medical findings, and ultimately found that Plaintiff's statements about her extreme limitations were not fully consistent with the overall record. *Id*. Based on this record, the Court cannot say that the ALJ failed to consider Plaintiff's subjective statements in accordance with the applicable regulation. *See* 20 C.F.R. § 404.1529(c).

Notably, even if the ALJ had not fully and expressly discussed all the regulatory factors, that failure "does not warrant remand, given that [her] credibility determination was supported by substantial evidence." *Lewis v. Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016); *see also* SSR 16-3p (cautioning that "not all of the types of evidence described below will be available or relevant in every case") (referring to, *inter alia*, the regulatory factors under §§ 404.1529(c), 416.929(c)); *Brewington v. Comm'r of Soc. Sec.*, No. 21-CV-5482, 2024 WL 329529, at *11 n.17 (E.D. Pa. Jan. 29, 2024) ("The fact that an ALJ did not discuss all the factors of 20 C.F.R. § 404.1529, including Brewington's type, dosage, effectiveness, and side effects of medication, does not warrant remand if substantial evidence otherwise supports the ALJ's credibility determination.") (citations omitted); *Alejandra D. v. Comm'r of Soc. Sec.*, No. CV 22-175, 2023 WL 2609134, at *7–8 (D.N.J. Mar. 22, 2023) ("Yet while the ALJ must provide 'specific reasons' for his findings, he need not set out an exhaustive discussion of every potential factor listed in the regulations.") (citations omitted); *Mason v. Colvin*, No. 15-1861, 2015 WL 6739108, at *6 (D.N.J. Nov. 3, 2015) ("The list [of factors contained in 20 C.F.R. § 404.1529(c)] is not comprehensive, nor is it mandatory for ALJs to go through each factor on the list in their opinions.") (citing 20 C.F.R. § 404.1529(c)(3)).[14]

_____

[14] In this respect, Plaintiff's reliance on *Frankowski v. Berryhill*, No. 2:16-cv-8846, 2018 U.S. Dist. LEXIS 138081 (D.N.J. Aug. 14, 2018) is inapposite. *See Plaintiff's Brief*, ECF No. 14, pp. 39–40 (quoting the finding in *Frankowski*, 2018 U.S. Dist. LEXIS 138081, at *13, that the ALJ

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id*.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  August 27, 2025                    _____*s/Norah McCann King*_____
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE

---

failed to "cite any evidence as to Frankowski's activities of daily living, his medication, or the other factors included in § 416.929(c)(3), that contradict his allegations of disabling pain") (internal quotation marks omitted).